# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**IN RE:     DONALD W. BRANSCUM**         CASE NO. 4:21-bk-11153
**DEBTOR**                                CHAPTER 12

## AGREED CASH COLLATERAL ORDER

Now pending before this Court is the Motion to Prohibit Use of Cash Collateral and Other Relief (Doc#: 8) (the "**Motion**") filed by Stone Bank (the "**Bank**"). After full and due consideration of the pleadings filed herein and agreement between the Bank, Debtor Donald W. Branscum ("**Debtor**"), and Renee Williams, Chapter 12 Standing Trustee (the "**Trustee**") for entry of this Order, this Court finds and orders as follows:

1.  <u>Cash Collateral Defined</u>. For the purposes of this Order, the term "**Cash Collateral**" means and includes all of the following:

    (a)     All cash collateral as defined in § 363 of the Bankruptcy Code; and

    (b)     All cash and cash equivalents that represent income, proceeds, products, offspring, rents, or profits from or generated by the Bank's collateral, whether pre- or postpetition, wherever located, that was, is, or will be in possession, custody, or control of Debtor or Debtor's estate, or in which Debtor or Debtor's estate obtained or will obtain an interest in during the pendency of this case, including, but not limited to, all cash and cash equivalents generated, earned, and received in connection with Debtor's cattle business operation.

2.  <u>Segregation of Cash Collateral in DIP Account</u>. Prior to or within five (5) business days after entry of this Order, Debtor will open and maintain a segregated "debtor-in-possession" bank account at the Bank (the "**DIP Account**") with Debtor being the only person with authority to access and withdraw from the DIP Account. Debtor will deposit and segregate all Cash Collateral

into the DIP Account within five (5) business days after Debtor's receipt of those funds (or, in the event that Debtor hold any Cash Collateral as of the date of the entry of this Order, then Debtor will deposit those funds into the DIP Account at the time it is opened). Debtor will pay for the Cattle Expenses and Monthly Adequate Protection Payments (each as defined below), plus the associated trustee fee for the Monthly Adequate Protection Payment, from the DIP Account. The Bank will not set off or seize any funds in the DIP Account without prior Order of this Court.

3. <u>Use of Cash Collateral</u>.

(a) <u>Permitted Uses</u>. Subject to the terms and conditions set forth herein, Debtor is authorized to use the Bank's Cash Collateral for the following: (A) to purchase, in the ordinary course of Debtor's cattle business, the following: cattle, feed, fertilizer, chemicals, supplies, fuel, insurance, repairs and maintenance, taxes, utilities, veterinary, medicine, and other expenses related to operate Debtor's cattle business (collectively, the "**Cattle Expenses**"); and (B) to pay the Monthly Adequate Protection Payments (as defined below), plus the associated trustee fee.

(b) <u>All Other Uses Prohibited</u>. Debtor is prohibited from using the Bank's Cash Collateral except in accordance with this Order. If Debtor desires to use the Bank's Cash Collateral in a manner inconsistent with this Order, prior to such non-conforming use of the Cash Collateral, Debtor will be required to obtain the prior written consent of the Bank (which may be granted or withheld in the Bank's sole discretion), or an Order from this Court entered after notice and hearing.

4. <u>Adequate Protection to Bank</u>.

(a) <u>Payments to Bank</u>. As adequate protection, Debtor will pay to the Trustee for the benefit of the Bank the amount of Four Hundred Fifty and 00/100 Dollars ($450.00) (the "**Monthly Adequate Protection Payment**"), plus the corresponding trustee fee, for a total of

$484.00, each month Debtor is authorized to use Cash Collateral under this Order during such month, whether such authorization is for the entire month or less than the entire month. Debtor will remit each Monthly Adequate Protection Payment to the Trustee on or before the twentieth (20th) calendar day of each month, starting in August 2021. The Trustee will remit to the Bank the Monthly Adequate Protection Payment paid for the benefit of the Bank in accordance with the Trustee's payment remittance procedures. Upon receipt of the Monthly Adequate Protection Payment from the Trustee, the Bank will apply the funds to the principal balance owed by Debtor to the Bank in connection with Loan No. **3986.

    (b)    <u>Additional Security Interests and Liens Granted to Bank</u>. As further adequate protection, Debtor hereby grants the Bank additional security interests and liens on the following property of Debtor regardless of where located:

    (a)    All cattle now owned or existing or hereafter acquired or created; their products, produce, offspring, and proceeds from the sale of; any addition, replacement, or substitution of the foregoing; and all records of any kind relating to the foregoing;

    (b)    All equipment, now owned or existing or hereafter acquired or created; their parts, attachments, and accessions thereto; any addition, replacement, or substitution of the foregoing; and all records of any kind relating to the foregoing;

    (c)    All Cash Collateral; and

    (d)    All proceeds, products, offspring, rents, and profits of all of the foregoing.

Debtor will, and is authorized to, execute and deliver to the Bank all documents the Bank believes is necessary to further evidence its additional security interests and liens granted in this Order, including, but not limited to, security agreements and UCC financing or continuation statements. The Bank is authorized to file and record with the appropriate federal, state, and/or local agencies all UCC financing or continuation statements and other documents or instruments to evidence its additional security interests and liens granted by Debtor. The automatic stay under the Bankruptcy Code is hereby lifted to the extent necessary to effectuate these provisions regarding the additional security interests and liens, and the provisions of Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure do not apply to such relief from the stay or to the Bank in connection with such relief from the stay. The additional security interests, liens, and assignments granted in this Order are in addition to all security interests and liens in favor of the Bank provided under applicable law.

5. <u>Sale of Bank Collateral</u>.

(a) <u>Cattle</u>. Debtor may sell Debtor's cattle in the ordinary course of Debtor's business, provided that: (A) any and all such sales will only be with and/or through the following cattle buyer, sale barn, or stockyard: (i) Damascus Livestock Auction LLC located in Damascus, Arkansas (the "**Approved Cattle Buyer(s)**"); and (B) all checks for the sale proceeds of cattle be issued jointly to Debtor and the Bank. If Debtor desires to sell to any cattle buyer, sale barn, or stockyard other than an Approved Cattle Buyer, Debtor will provide the Bank with written notice of the name and address of the proposed cattle buyer, sale barn, or stockyard within a reasonable time prior to any such sale to allow the Bank to determine whether to approve such cattle buyer, sale barn, or stockyard as an Approved Cattle Buyer, which approval will not be unreasonably withheld. The Bank may advise any cattle buyer, sale barn, or stockyard of the following: (i) the Bank's

security interests and liens on Debtor's cattle; (ii) any of the information or notices to be furnished pursuant to the Food Security Act of 1985, 7 U.S.C. § 1631, and other applicable law; and (iii) that any check for the sale proceeds of cattle is to be issued jointly to Debtor and the Bank.

  (b) <u>Other Bank Collateral</u>.  Except for the sale of cattle sold in accordance with Section 5(a) above, Debtor may not sell, convey, or transfer any other collateral of the Bank without prior written consent of the Bank (which may be granted or withheld in the Bank's sole discretion) or Order of this Court after notice and hearing.

 6. <u>Debtor's Reporting Obligations</u>.

  (a) <u>Accounting Prior to Entry of Order</u>. Within ten (10) business days after entry of this Order, Debtor will:

   (i) file with this Court a statement, verified by Debtor under oath, that identifies the amount of Cash Collateral held by Debtor at the time this proceeding was filed and further identifies, itemizes, and accounts for the Cash Collateral received and used by Debtor since the date this proceeding was filed to the date that Debtor opens the DIP Account and deposits all Cash Collateral on hand into the DIP Account; and

   (ii) provide the Bank all bank statements for the accounts that held the Bank's Cash Collateral for that same time period.

  (b) <u>Monthly Reporting</u>. On or before the twentieth (20th) calendar day of each month, Debtor will furnish to the Bank the following: (i) Debtor's monthly operating report of the previous month's operations, which will include an itemization and summary of all sources and uses

of Cash Collateral during the previous month; and (ii) a copy of all receipts, invoices, and other similar documents reflecting cattle sales and purchases during the previous month, to the extent not previously provided to the Bank.

      (c)    Cattle Deaths. If any of Debtor's cattle die, Debtor will report such deaths in writing to the Bank within two (2) business days.

      (d)    Other Supporting Documentation. Debtor will make all other documentation supporting Debtor's sources and uses of Cash Collateral available to the Bank, and its representatives, agents, and counsel, for purposes of review and inspection on a regular and routine basis during regular business hours or such other time as mutually arranged with Debtor.

7.    No Cash Transactions. Debtor is prohibited from engaging in any cash transaction in connection with the purchase or sale of cattle.

8.    Bank's Inspection Rights. In addition to the collateral inspection rights permitted under the agreements between the Bank and Debtor, the Bank will be entitled to inspect the Bank's collateral upon providing two (2) business days written notice to Debtor, through their counsel, and Debtor will provide the Bank, and its representatives, agents, and counsel, all reasonable and necessary access to the collateral for inspection.

9.    Termination of Authorization to Use Cash Collateral for Payment of Cattle Expenses. Debtor's authorization to use Cash Collateral for payment of Cattle Expenses will terminate, without further notice or hearing, upon the earliest occurrence of the following events:

      (a)    If the Bank obtains relief from the stay in connection with this matter (other than relief from the stay in connection with Debtor's 40 acres, more or less, located in Searcy County, Arkansas);

       (b)       Entry of an Order confirming or denying confirmation of any Chapter 12 Plan proposed by Debtor, whether as originally proposed or as amended, modified, or supplemented;

       (c)       Dismissal or conversion of this Chapter 12 bankruptcy proceeding; or

       (d)       By written agreement of the Bank and Debtor or by Order of this Court.

10.       *Failure to Cure; Relief from Automatic Stay*. If Debtor fails to fully cure a default under this Order within ten (10) days after the Bank provides written notice to Debtor, through his counsel, that Debtor has failed to comply with any term of this Order, the Bank is entitled to *ex parte* relief from the automatic stay without further notice or hearing upon the filing of a motion and supporting affidavit of uncured default by the Bank, which such *ex parte* relief will allow the Bank to pursue all of its lawful remedies against its collateral and Debtor's rights, title, claims, and interests in that collateral, including without limitation seeking *in rem* relief against its collateral, foreclosure of its collateral, and enforcement of its security interests and liens (including but not limited to set off and/or seizure of the DIP Account) through filing and/or continuation of foreclosure action or the pursuit of any other appropriate legal or equitable action. In the event that relief from the stay is granted pursuant to this Section, the provisions of Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure will not apply to such relief from the stay or to the Bank in connection with such relief from the stay.

11.       *Amendments*. The terms and conditions of this Order may be amended only by written agreement of the Bank and Debtor or Order of this Court.

12.       *No Waiver*. The delay or failure of the parties to seek relief or otherwise exercise its rights and remedies under this Order will not constitute a waiver of any such right or remedy. All rights of the parties are reserved.

13. <u>Retention of Jurisdiction</u>. The Court hereby retains jurisdiction over all matters pertaining to the implementation, interpretation, and enforcement of this Order.

**IT IS SO ORDERED.**

CC: Attorney for Debtor
Debtor
U.S. Trustee
Attorneys for Creditors

_Phyllis M. Jones_
Phyllis M. Jones
United States Bankruptcy Judge
Dated: 08/25/2021

**APPROVED:**

**HOPKINS CASTSTEEL PLC**
Attorneys at Law
1000 West Second
Little Rock, Arkansas 72201
www.hopkinslawfirm.com
Telephone: (501) 375-1517
Facsimile: (501) 375-0231
Email: rcaststeel@hopkinslawfirm.com

**By: /s/ Ryan J. Caststeel**
**Ryan J. Caststeel**
Arkansas Bar No. 2007212
*Attorneys for Stone Bank*


**/s/ Kevin P. Keech, Esq. (added with permission)**
**Kevin P. Keech, Esq.**
**Keech Law Firm, PA**
2011 S. Broadway Street
Little Rock, AR 72206
*Attorney for Debtor*

/s/ Renee Williams (added with permission)

**Renee Williams, Esq.**
125 Roberts Ridge Terrace
Hot Springs, AR 71901-7286
(501) 624-4330
501-624-4639 (fax)
rwilliamstrustee@gmail.com
*Chapter 12 Standing Trustee*

-8-