IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS

IN RE: DONALD W. BRANSCUM,　　　　　　　　　　CASE NO. 4:21-bk-11153
　　　　　Debtor　　　　　　　　　　　　　　　　　　　　　　　　　Chapter 12

**AMENDED CHAPTER 12 PLAN**

　　　The Debtor proposes the following Plan relative to a petition filed on April 29, 2021, and pursuant to Chapter 12, Title 11, United States Code, §§ 1221 and 1222.

　　　The period of this Plan shall begin on the date of confirmation of this Plan and shall end of the fifth (5th) anniversary of that date unless otherwise noted below.

1. PAYMENTS TO THE TRUSTEE

    (a) The Debtor shall submit portions of his future income to the control and supervision of the Trustee as is necessary for the execution of this Plan. The plan length is 60 months.

    (b) Debtor shall pay to the trustee the following amounts:

    　　1. Ten (10) payments of **$21,000.00** semi-annually, beginning February 2022 through August 2026.

    　　2. In addition to the semi-annual payments, the Debtor will make annual payments beginning December 2021 and continuing until December 2025, of $1,000 per year, based on Debtor's net disposable income to pay general unsecured creditors.

    　　3. All payments to the trustee are to be received on or before the last day of the month in which the payment is due.

    　　4. The first payment shall begin February 2022.

2. PAYMENTS BY THE TRUSTEE

    (a)　　First, to the trustee's commission and expenses, at the percentage set by the United States Attorney General, pursuant to 28 USC 586(e).

    (b)　　Second, secured creditors. The terms of the debtor's prepetition agreement with each secured creditor shall continue to apply, except as otherwise provided for in this plan or the confirmation order. Secured creditors shall retain their liens until the payment of the underlying debt, determined under non-bankruptcy law, or discharge under §1228, as appropriate.

    Any allowed secured claims will be paid as shown below. If a creditor is not fully secured, the unsecured portion of the creditor's claim shall be treated as general unsecured claims.

    To creditors whose claims have been timely filed and allowed as secured, the Trustee will make payments as follows:

(1) LONG TERM DEBTS. The Debtor proposes to pay secured debts that will extend beyond the length of the plan, and for which the Debtor will resume payments to such Creditor upon completion of the plan as set forth below. Each creditor shall retain the liens securing their claim and payments shall be maintained according to the terms set forth in the plan. Specific payments shall be made as set forth below:

| Creditor | Collateral | Collateral Value | Amount of Filed claim or Estimated amount of debt | Month and year of First Payment | Plan Interest Rate | Periodic Payment Amount And number of payments through plan |
|---|---|---|---|---|---|---|
| Stone Bank (formerly known as Ozark Heritage Bank, N.A.) Loan No. **3986 (Cross-collateralized with Loan No. **7496). Claim No. 3 | 130.05 acres, more or less, in Stone County with improvements, including single-family residence and pasture land, located at or around 758 Highway 74, Alco, AR.; The leases and rents from that real estate; All equipment; All cattle; All proceeds (including all Cash Collateral and cattle sale proceeds), products, produce, offspring, rents and profits thereof; all additions, replacements and substitutions thereof, and All collateral described in Stone Bank's Proofs of Claims, Claim Nos. 3 & 4, which collateral descriptions are incorporated into the Plan. All Stone Bank loans / claims are cross collateralized. NOTE: 40 acre tract of land in Searcy County is being surrendered | $220,252.40 | $220,252.40 | February 2022 | 5% | Debtor re-amortizes this debt over 20 years at 5.0% per annum, paid in 10 bi-annual payments (paid in February and August) of **$8,774.03** beginning February 2022 throughout the life of the Plan, and a balloon payment of the outstanding balance being due six (6) months after Plan completion. The unsecured portion of this debt, if any, will be treated as a general unsecured claim. All other terms of the Debtor's pre-petition loan documents are incorporated by reference herein, including cross-collateralization provisions, and remain in full force and effect except as modified hereby |

| Creditor | Collateral | Collateral Value | Amount of Filed claim or Estimated amount of debt | Month and year of First Payment | Plan Interest Rate | Periodic Payment Amount And number of payments through plan |
|---|---|---|---|---|---|---|
| Stone Bank (formerly known as Ozark Heritage Bank, N.A.) Loan No. **7496 (Cross-collateralized with Loan No. **3986). Claim No. 4 | 130.05 acres, more or less, in Stone County with improvements, including single-family residence and pasture land, located at or around 758 Highway 74, Alco, AR.; The leases and rents from that real estate; All equipment; All cattle; All proceeds (including all Cash Collateral and cattle sale proceeds), products, produce, offspring, rents and profits thereof; all additions, replacements and substitutions thereof, and All collateral described in Stone Bank's Proofs of Claims, Claim Nos. 3 & 4, which collateral descriptions are incorporated into the Plan. All Stone Bank loans / claims are cross collateralized. NOTE: 40 acre tract of land in Searcy County is being surrendered. | $242,308.00 | $310,226.70 | February 2022 | 5% | Debtor re-amortizes the secured portion of this loan over 20 years at 5.0% per annum paid in 10 bi-annual payments (paid in February and August) of **$9,652.64** beginning February 2022 throughout the life of the Plan, and a balloon payment of the outstanding balance being due six (6) months after Plan completion. The unsecured portion of this debt, if any, will be treated as a general unsecured claim. All other terms of the Debtor's pre-petition loan documents are incorporated by reference herein, including cross-collateralization provisions, and remain in full force and effect except as modified hereby. |

 (c) Third, Domestic Support Obligation:

   _XX____ The Debtor has no domestic support obligation.

   _____The regular domestic support payment shall be paid by the Debtor directly.

 (d) Fourth, allowed administrative expenses under §507(a)(2).

The Debtors' attorney fees and expenses and accountant fee and expenses are subject to approval of the Court by separate application. As of the date of this order, court approved accounting fees and expenses through October 12, 2021, are **$1,305.23** – see Docket No. 59 and approved attorney fees and expenses for Debtor's counsel through October 1, 2021 are **$10,168.04** – see Docket No. 55. **The estimated amount of total post-petition attorney fees is $17,000 and the estimated amount of accountant fees is $3,000, but this may vary.** After application of credits from pre-petition retainer to approved fee and expense applications by Debtor's counsel, **the balance to Debtor's counsel through October 1, 2021 is $7,180.04**. Any amounts in addition to the initial retainer paid pre-petition shall be paid only upon appropriate application and allowance by order of the court.

(e) Fifth, allowed priority unsecured claims will be paid in full. Debtor is only aware of one such claim- POC No. 2 filed by the IRS in the amount of $56.76.

(f) Sixth, NONPRIORITY UNSECURED CLAIMS. Allowed nonpriority unsecured claims shall be paid pro rata, from a minimum dividend of $0.00 over the life of the life of the plan, this being the amount the unsecured creditors would receive if this were a proceeding under Chapter 7 of the bankruptcy Code. (SEE SCHEDULE A). During the course of the Plan, should the Debtor(s)' net income exceed in any material way the projections set forth on SCHEDULE B, such excess income pursuant to the requirements of 11 U.S.C. § 1225(b)(1)(B), shall be paid to the trustee for the benefit of general unsecured creditors. Payments will be made in annual installments made at a minimum annually in June of each year.

**Payments will be made in equal     annual installments made at a minimum annually in December of each year.**

3. PROPERTY TO BE SOLD OR SURRENDERED.

   (a)  The property described below is to be sold. All offers received by the debtor shall be promptly communicated to the Trustee and lienholders, and no sale of such property shall be completed without notice to creditors and the trustee and an opportunity for a hearing: **N/A.** provided however, the Debtor will buy and sell livestock in the ordinary course of business.

   (b)  Debtor(s) surrenders the collateral securing the claims of the following creditors:

| CREDITOR | COLLATERAL |
|---|---|
| Stone Bank-Loan No. **3986 | 39.96 acres in Searcy County |

4. EXECUTORY CONTRACTS

   The debtor _XX__ assumes or _____ rejects the following executory contract or unexpired lease. If rejected, no further payments are to be made to the creditor on the contract or lease; however, the creditor may file a claim for the deficiency and will be treated as a non-priority unsecured creditor.

| CREDITOR | CONTRACT |
|---|---|
| | |

| | |
|---|---|
| Any Landlord Share Rent Agreements or Necessary Supply Contracts for engaging in farming operations in the ordinary course of business | Various |

5. MISCELLANEOUS PROVISIONS

(a)     Effective Date of the Plan. The effective date of the Plan shall be the date the plan is confirmed by the Court.

(b)     Vesting of Property Free and Clear of Liens. Except as provided in this plan or in the order confirming the plan, upon confirmation of this plan all of the property of the estate shall vest in the debtor(s) free and clear of any claim or interest of any creditor provided for by this plan pursuant to 11 USC §1227.

(c)     Payments to and by Trustee. All payments to creditors pursuant to Debtors' Plan shall be remitted to the Chapter 12 Standing Trustee for disbursement to creditors. Debtors' payments shall be made by cashier's check, money order or certified check. If Debtors' payments are made by any other means, the Trustee may withhold payments to creditors for a sufficient period of time to allow the Trustee to negotiate and collect the funds paid by the Debtors. Should the trustee not have sufficient funds in trust to pay fully the disbursements set forth herein, unless Debtors designate the intended recipient of any payment to the Trustee, disbursements of funds available shall be made pro rata.

(d)     Operation of Business. Except as otherwise provided in this Plan, Debtors shall be entitled to manage their business and personal affairs without further order of the Court.

(e)     Prepayment. Any claim provided for in this Plan may be prepaid at any time without penalty.

(f)     Sale of Farm Products. Subsequent to confirmation of this Plan, Debtors may sell crops or livestock in the ordinary course of business without approval by the Trustee, the Court or any creditor. Debtors may use said proceeds for the maintenance and support of the Debtors and dependents of the Debtors, for payment of expenditures necessary for the continuation, preservation, and operation of the Debtors' business, and payments due under the confirmed Plan of reorganization.

(g)     Capital Expenditures. Other than in the ordinary course of business, Debtors may not purchase land or equipment or incur any other substantial capital expenses without consent of the Standing Trustee. Acquisition of machinery and equipment in excess of $5,000.00 shall not be in the ordinary course of the farming operations.

(h)     Documentation. The Debtor(s) are authorized to execute all necessary documents to evidence debts as restructured in this Plan.

(i)     Liens. All post-petition crops are free and clear of any prepetition liens or security interest unless such prepetition liens or security interest are retained in the Plan.

(j)     Curing of Defaults. This Plan shall operate to cure any default on any long-term debt notwithstanding that such claim has been accelerated by the claim holder.

(k)     Claims Allowance Process. All filed claims as of the date of this Plan, along with Claim 3 and Claim 4 of Stone Bank filed June 25, 2021, shall be allowed. Any disputed claims will be

resolved by this Court through Claims objection(s), or, if determined by this Court, through ancillary Court proceedings.

(l) <u>Additional Provisions Related to Stone Bank</u>.

**(i) Definitions.**

**(a) Cash Collateral.** For the purposes of this Plan, the term "**Cash Collateral**" shall mean and include all of the following:

(i) All cash collateral as defined in § 363 of the Bankruptcy Code; and

(ii) All cash and cash equivalents that represent income, proceeds, products, offspring, rents, or profits from or generated by Stone Bank's collateral, whether pre- or post-petition, wherever located, that was, is, or will be in possession, custody, or control of Debtor or Debtor's estate, or in which Debtor or Debtor's estate obtained or will obtain an interest in during the pendency of this case, including, but not limited to, all cash and cash equivalents (A) generated, earned, and received in connection with Debtor's cattle business operation; (B) generated, earned, or received in connection with the lease or rental of any of the Real Estate (as defined herein); and/or (C) deposited in any bank account that either Debtor has used or will use in connection with their cattle business operation and with the lease or rental of any of the Real Estate (as defined herein).

**(b) Real Estate.** For purposes of this Plan, the term "**Real Estate**" means collectively the following real estate: 130 acres, more or less, and improvements located at or around 758 Highway 74, Alco, AR.

**(ii) Stone Bank Collateral.** Stone Bank has, retains, and is granted security interests and liens in all of the property described in Stone Bank's Proofs of Claims and the documents attached thereto and the Cash Collateral. Stone Bank holds first priority, valid, continuing, enforceable, and exclusive security interests and liens on all of its collateral described in the Plan and in the loan documents attached to Stone Bank's Proofs of Claims. The security interests and liens of Stone Bank on its collateral have been and are properly perfected. All of Stone Bank's collateral secures repayment of Stone Bank's claims and loans. All of Stone Bank's collateral is cross collateralized with all of Stone Bank's claims and loans. All post-petition collateral of Stone Bank is subject to Stone Bank's pre-petition liens and security interests. Stone Bank retains all of its pre-petition liens and security interests. Debtor will not grant any security interest, lien, mortgage, or other interest in or to any of Stone Bank's collateral without the prior written consent of Stone Bank or order of the Bankruptcy Court after notice and hearing.

**(iii) Segregation of Cash Collateral in DIP Account.** During the term of this Plan, Debtor will maintain his current segregated "debtor-in-possession" bank account at Stone Bank (the "**DIP Account**") with Debtor being the only person with authority to access and withdraw from the DIP Account, and Debtor will deposit and segregate all Cash Collateral into the DIP Account within five (5) business days after Debtor's receipt of those funds. Stone Bank shall not set off or seize any funds in the DIP Account without prior Order of this Court.

**(iv)  Sale of Cattle.** Debtor may sell his cattle in the ordinary course of his business, provided: (A) that any and all such sales will only be through Damascus Livestock Auction LLC located in Damascus, Arkansas (the "**Approved Cattle Buyer(s)**"); and (B) that all checks for the sale proceeds of cattle be issued jointly to Debtor and Stone Bank. If Debtor desires to sell to any cattle buyer, sale barn, or stockyard other than those that are Approved Cattle Buyers, Debtor will provide Stone Bank with written notice of the proposed buyer and the proposed buyer's address within a reasonable time prior to any such sale to allow Stone Bank to determine whether to approve such buyer as an Approved Cattle Buyer, which approval will not be unreasonably withheld. Stone Bank may advise any cattle buyer, sale barn, or stockyard of the following: (i) Stone Bank's lien on Debtor's cattle; (ii) any of the information or notices to be furnished pursuant to the Food Security Act of 1985, 7 U.S.C. § 1631, and other applicable law; and (iii) that any check for the sale proceeds of cattle is to be issued jointly to Debtor and Stone Bank.

**(v)  No Cash Transactions.** Debtor is prohibited from engaging in any cash transaction in connection with purchase or sale of cattle. Debtor's agreement with Damascus Livestock Auction LLC, wherein Debtor allows Damascus Livestock Auction LLC to graze cattle on Debtor's land in exchange for Damascus Livestock Auction LLC providing credit to Debtor to purchase cattle, is permitted.

**(vi) Debtor's Reporting Obligations.**

**(a)  Monthly Reporting.** On or before the twentieth (20th) calendar day of each month, Debtor will furnish to Stone Bank the following: (i) Debtor's monthly operating report of the previous month's operations, which shall include an itemization and summary of all sources and uses of Cash Collateral during the previous month; and (ii) a copy of all receipts, invoices, and other similar documents reflecting cattle sales and cattle purchases during the previous month, to the extent not previously provided to Stone Bank.

**(b)  Cattle Deaths.** If any of Debtor's cattle die, Debtor will report such deaths in writing to Stone Bank within two (2) business days.

**(c)  Other Supporting Documentation.** Debtor will make all other documentation supporting Debtor's sources and uses of Cash Collateral available to Stone Bank, and its representatives, agents, and counsel, for purposes of review and inspection on a regular and routine basis during regular business hours or such other time as mutually arranged with Debtor.

**(vii) Default; Relief from Automatic Stay; Remedies.** During the term of the Plan, if Debtor fails to cure any default within ten (10) days after Stone Bank provides written notice to Debtor, through his counsel, that Debtor has failed to comply with any material term of the Plan or applicable loan document, Stone Bank is entitled to *ex parte* relief from the automatic stay under the Bankruptcy Code without further notice or hearing upon the filing of a motion and supporting affidavit of uncured default. Rule 4001(a)(3) of Federal Rules of Bankruptcy Procedure does not apply to any order granting relief from stay pursuant to this provision. In the event Stone Bank obtains relief from the automatic stay, Stone Bank is entitled to invoke, pursue, and enforce any and all rights and remedies under the applicable loan documents and non-bankruptcy law

(excluding seeking *in personam* relief against Debtor if Stone Bank is prohibited under applicable bankruptcy law from seeking *in personam* relief at that time), which rights and remedies include, but are not limited to, accelerating all debt due and owing by Debtor to Stone Bank to be immediately due and payable, exercising its right of set off, and pursuing enforcement of all of its rights and remedies against its collateral and Debtor's interest in that collateral. In the event Stone Bank obtains relief from the automatic stay during the term of the Plan, all of Stone Bank's rights to seek *in personam* relief against Debtor is hereby reserved.

**(viii)** **Further Documentation.** At Stone Bank's option, Debtor will execute and deliver, and cause any co-borrower, co-grantor, or co-obligor to execute and deliver, to Stone Bank all documents Stone Bank believes is necessary to further evidence Debtor's debt owed to Stone Bank, and Stone Bank's security interests and liens in its collateral, including, but not limited to, promissory notes, loan agreements, security agreements, mortgages, assignments of leases and rents, UCC financing or continuation statements, modifications, and other documents or instruments. Stone Bank is authorized to file and record any such document or instrument with the appropriate federal, state, and/or local government agencies. The automatic stay under the Bankruptcy Code is hereby lifted to the extent necessary to effectuate these provisions. Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure does not apply to the lifting of the automatic stay pursuant to this provision.

**(ix)** **Modification of Loans.** Except as modified by the provisions of this Plan, the terms and provisions of the promissory notes, loan agreements, security agreements, mortgages, assignments of leases and rents, UCC financing or continuation statements, modifications, and other documents or instruments between Stone Bank and Debtor are unaffected and remain in full force and effect. Debtor will adhere to all provisions in the loan documents, whether those documents are attached to Stone Bank's Proofs of Claims, to be executed, or otherwise exist, all of which are incorporated in this Plan by reference and shall supplement the provisions contained in this Plan. During the term of this Plan, to the extent there is any conflict between this Plan and the provisions in any loan document, the provisions of this Plan prevail.

**(x)** **Designated Recipient.** Debtor will designate Stone Bank as the intended recipient on all payments Debtor remit to the Chapter 12 Standing Trustee for the benefit of Stone Bank under this Plan. All amounts owed to Stone Bank after the term of the Plan shall be paid by Debtor directly to Stone Bank.

**(xi)** **Non-Debtor Cattle.** Any cattle placed on the Real Estate not owned by Debtor will be, at all times while on the Real Estate, physically segregated by a fence from Debtor's cattle and/or marked by ear tags that identify them as not being owned by Debtor.

DATED January 12, 2022.

                                                     _/s/ Donald W. Branscum_
                                                     Debtor – Donald W. Branscum

/s/ Kevin P. Keech
Kevin P. Keech
Attorney for Debtor(s)

SCHEDULE A
LIQUIDATION ANALYSIS

The following liquidation analysis includes all of the property in which the Debtor(s) has any interest.

| ASSET | FULL MARKET VALUE OF THE PROPERTY | LIENS AGAINST THE FULL MARKET VALUE | AMOUNT CLAIMED AS EXEMPT | SPECIFIC LAW THAT ALLOWS EXEMPTION | NET VALUE TO THE ESTATE |
|---|---|---|---|---|---|
| Stone County real estate | $315,000.00 | $315,000.00 (Stone Bank cross-collateralized) | $0.00 | N/A | $0.00 |
| Searcy County real estate | $40,000 | $40,000 (Stone Bank cross-collateralized) | $0.00 | N/A | $0.00 |
| Equipment/farm collateral | $147,560 | $147,560 (Stone Bank cross-collateralized) | $0.00 | N/A | $0.00 |
| Toyota | $6,425 | N/A | $6,425 | 11 U.S.C. §§ 522(d)(2) and (d)(5) | $0.00 |
| General household goods and furnishings | $5,000 | N/A | $5,000 | 11 U.S.C. § 522(d)(3) | $0.00 |
| First National | $3,580.22 | N/A | $3,580.22 | 11 U.S.C. §§ | $0.00 |

| Bank of Izard County account | | | | 522(d)(5) | |
|---|---|---|---|---|---|
| First National Bank of Izard County | $666.89 | N/A | $666.89 | 11 U.S.C. §§ 522(d)(5) | $0.00 |
| Home Bank of Arkansas account | $8,876.88 | N/A | $8,876.88 | 11 U.S.C. §§ 522(d)(5) | $0.00 |
| Stone Bank account | $1,500 | N/A | $1,500 | 11 U.S.C. §§ 522(d)(5) | $0.00 |

SCHEDULE B
PROJECTED INCOME AND EXPENSES

The Debtor(s)'s farm revenues derive principally from the production and marketing of livestock. Projected annual revenues are as follows:

| | |
|---|---|
| Gross Livestock Sales | $250,000 |
| Total farm revenues, annually, are expected to be: | $250,000 |
| In addition, the Debtor(s) participates in certain programs of the __N/A_____ that result in annual government payments of approximately: | N/A |
| The Debtor(s) and his spouse also earn from personal services an annual net income of: (Social Security and pension) | $21,000 |
| Annual business expenses, including taxes and rents are anticipated to not exceed: | $208,000 |
| Plan Payments | $42,000 |
| Personal expenses per year are estimated to be approximately: | $20,000 |
| TOTAL PROJECTED DISPOSABLE INCOME: | $1,000 |

SCHEDULE C
PLAN SUMMARY

| CLAIMANT | AMOUNT OF PAYMENT | FREQUENCY | DATE OF PAYMENT |
|---|---|---|---|
| Stone Bank | $8,774.03 | Semi-Annually | February and August, beginning 2022 |
| Stone Bank | $9,652.64 | Semi-Annually | February and August beginning 2022 |
| Attorney and Accountant Fee (through October 1, 2021), subject to increase as Court may award | $8,485.27 ($7,180.04 counsel; $1,305.23 accountant) | Per Court Order | To be determined |
| Trustee's Fee | Percentage set by the Attorney General, which is effective on the date of the payment pursuant to 28 U.S.C. Section 586(e), | Per Trustee | To be determined. |
| Disposable Income | $1,000.00 | Annually | June, beginning 2022 |